PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SANDRA WHEATLEY; JANE GROGAN,
            *Plaintiffs-Appellants,*

v.

WICOMICO COUNTY, MARYLAND,
            *Defendant-Appellee.*

No. 03-2406

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-01-1665-JFM-1)

Argued: September 29, 2004

Decided: November 22, 2004

Before WILKINSON and LUTTIG, Circuit Judges,
and Henry E. HUDSON, United States District Judge
for the Eastern District of Virginia,
sittting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Luttig and Judge Hudson joined.

## COUNSEL

Francis Joseph Collins, KAHN, SMITH & COLLINS, P.A., Balti-
more, Maryland, for Appellants. Shirlie Norris Lake, ECCLESTON
& WOLF, Baltimore, Maryland, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

Sandy Wheatley and Jane Grogan supervise the Wicomico County, Maryland, Emergency Services Department, which includes the 911 call center. In June 2001, they sued the County, alleging violations of the Equal Pay Act and Title VII. Ms. Grogan and Ms. Wheatley claim that male department supervisors are paid significantly more than female department supervisors, despite the fact that all perform substantially equal managerial work. The plaintiffs also accuse the County of sex discrimination.

We are unpersuaded that "equal work" under the Equal Pay Act can be established when two employees have similar titles but responsibilities that bear no more than the most general resemblance. We likewise affirm the district court's dismissal of plaintiffs' Title VII claims.

I.

Wicomico County employs over 500 people, organized in approximately eleven different departments. The departments vary in size and function. The Emergency Services Department is comprised of approximately 22 people; it operates the 911 call center 24 hours a day, 365 days a year. Since 1986, Sandy Wheatley has served as director of the Emergency Services Department. Jane Grogan has been the deputy director since 1997. Neither woman's job competence has been questioned.

Beginning in 1999, Wicomico County commissioned a study to evaluate its compensation schedule for all 500 of its employees. The purpose of the study was to ensure that County employees were being paid equally for equal work, and also to guarantee that they were being paid comparably to persons in the same positions in other jurisdictions. This "Hendricks Study," performed by Charles Hendricks, led Wicomico County to reconfigure its pay schedule.

The new plan created 22 separate grades and assigned a numerical

grade to all County jobs. Grade assignments were based on seven criteria: education, job complexity, scope and impact, supervision, working relationships, working environments, and physical demands. Mr. Hendricks chose these seven criteria because he found them comparable to the four criteria set forth in the Equal Pay Act.[1]

Once the jobs were assigned a grade, individual salaries were set using a mathematical formula, based in part on pre-study salaries. Within each grade, the Hendricks study recommended a minimum, maximum, and mid-point salary. Ms. Wheatley's job was originally classified as Grade 16, though it was re-classified as Grade 17 after she filed a complaint with the County Administrative Director. Although she received an 18% pay increase as a result of the Hendricks study, her salary was set below the mid-point of her grade. Ms. Grogan's job was classified as a Grade 13 — her pay increased by a similar proportion, but she too received a salary below the mid-point of her grade. Ms. Wheatley now earns $65,808 annually, and Ms. Grogan earns $49,164.

The case proceeded to trial on October 20, 2003. Ms. Wheatley and Ms. Grogan offered statistical evidence to demonstrate a pay disparity between male department leaders and female department leaders. Both plaintiffs suggested that they are paid, on average, $25,000 a year less than the male directors and deputy directors in other departments. Additionally, plaintiffs submitted statistics indicating that while they were assigned salaries below the midpoint for their Hendricks grades, all male directors and deputy directors were given salaries above their grade midpoints.

Ms. Wheatley and Ms. Grogan also attempted to demonstrate that department managers all perform the same general duties. Ms. Wheatley testified that, like herself, directors of other departments supervise subordinates, conduct staff meetings, prepare budgets, answer to the same County Council, and otherwise manage their departments. She

---

[1]The EPA mandates equal pay for the performance of jobs which require (1) equal skill, (2) equal effort, (3) equal responsibility, and which are performed under (4) equal working conditions. 29 U.S.C. § 206(d)(1)(2000).

told the jury that, aside from a difference in subject-matter, all department heads bore the same responsibilities.

After two and a half days of presenting evidence, plaintiffs rested. Before putting on its case, the County made a motion for judgment as a matter of law. The trial judge heard argument on the motion. It was during this argument that plaintiffs' counsel first articulated a new theory of the case. He argued that plaintiffs perform work substantially equal to the work performed by male employees whose jobs are assigned the same Hendricks Grades. On this new theory of the case, Ms. Wheatley would point not to other department heads but to male employees in Grade 17 as her comparators, and Ms. Grogan would compare herself to males in Grade 13.

At this point in the hearing, the district court expressed frustration with the new strategy. He emphasized that "from the outset," the case had been tried "on the theory that the heads of the departments are comparable positions, both for purposes of Title VII and the Equal Pay Act." The court concluded that plaintiffs had failed to establish sufficient comparability with these department leaders. As for a potential comparison to employees in the same Hendricks grade, he concluded that this theory of the case should have been identified earlier. Since it was not announced until after all of plaintiffs' evidence had already been submitted, the trial judge refused to entertain the new argument.

The district court granted the County's motion for judgment as a matter of law, and plaintiffs now appeal.

## II.

The granting of a motion for judgment as a matter of law is reviewed de novo. *Corti v. Storage Tech. Corp.*, 304 F.3d 336, 341 (4th Cir. 2002). Such a motion is properly granted "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995)(internal quotation omitted).

Ms. Wheatley and Ms. Grogan allege Wicomico County violated the Equal Pay Act ("EPA") which provides:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1)(2000). To make out a prima facie case under the EPA, the burden falls on the plaintiff to show that the skill, effort and responsibility required in her job performance are equal to those of a higher-paid male employee. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974). In interpreting the EPA, "'[e]qual means *substantially equal.*'" *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493 (4th Cir. 1972)(quoting *Schultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir. (1970)).

The plaintiffs eventually articulated two separate legal theories, both anchored in the EPA. The district court found their first argument to be deficient, and their second argument to be tardy. For the reasons that follow, we agree.

### A.

We first address plaintiffs' original theory of the case — the one relied upon at trial. As expressed in their opening statement, Ms. Wheatley and Ms. Grogan's strategy was to compare their jobs to jobs held by male department heads. To support their theory, the women relied on evidence that all managers — regardless of department subject matter — ultimately perform the same supervisory duties. They all, for instance, prepare budgets, monitor employees, and conduct meetings.

We decline to accept the argument, however, that employees with the same titles and only the most general similar responsibilities must be considered "equal" under the EPA. In actuality, plaintiffs present

a classic example of how one can have the same title and the same general duties as another employee, and still not meet two textual touchstones of the EPA — equal skills and equal responsibility.

First, it is simply not the case that all department director positions require equal skills. Both the Director and Deputy Director of Public Works in Wicomico County, for instance, are required to hold graduate degrees in civil engineering. By contrast, Ms. Wheatley and Ms. Grogan perform their jobs well without possessing any advanced degrees at all. While it is certainly true that plaintiffs provide valuable services to the County, it would be disingenuous to argue that their jobs require skills substantially equal to the jobs which require engineers to direct the Department of Public Works. Indeed, to accept plaintiffs' position would mean that although market demand for different skills may vary greatly, the salaries that employers pay for such skills must be the same.

The case law reveals a helpful analogy. In *Soble v. University of Maryland*, 778 F.2d 164 (4th Cir. 1985), a female Assistant Professor sought to compare herself, for purposes of the EPA, to other assistant professors in a dental school. Professor Soble, who taught in the field of community dentistry, held degrees in sociology and social work. *Id.* at 167. The vast majority of her colleagues, however, held degrees in dentistry. We found that merely possessing the same title of "assistant professor" was not enough to satisfy the EPA requirement of "equal skills." *Id.* Because the professorships in other departments were "highly specialized and require[d] distinct skills" we foreclosed Professor Soble from making an EPA comparison to them. *See also Strag v. Bd. of Trustees*, 55 F.3d 943, 950 (4th Cir. 1995)(employing similar analysis for the EPA claim of a female math instructor). Similarly, pointing to the mere appellation of "department head" does not suffice to carry plaintiffs' burden under the skills prong of the EPA.

In addition to their failure to show equal skills, Ms. Wheatley and Ms. Grogan also fall short of satisfying a second major EPA requirement. They fail to establish that their jobs and the jobs of other department heads carry substantially equal responsibilities. We have explained that jobs do not automatically involve equal effort or responsibility even if they "entail most of the same routine duties." *Hodgson*, 454 F.2d at 493. Jobs are considered unequal — despite

having the same general core responsibilities — "if the more highly paid job involves additional tasks which (1) require extra effort . . . (2) consume a significant amount of the time . . . and (3) are of an economic value commensurate with the pay differential." *Id.* (internal quotation omitted).

Despite plaintiffs' arguments to the contrary, it is significant that different Wicomico County departments perform completely different functions. The Director of Recreation, Parks & Tourism is, among other things, responsible for park maintenance; the Director of Public Works is responsible for coordinating the dredging of waterways; and the Director of Emergency Services is responsible for coordinating resources in the event of a disaster. Granted, at a high level of abstraction these positions all require directors to do the same thing — supervise, coordinate, and organize. But, the EPA demands more than a comparison of job functions from a bird's eye view.

In enacting the EPA, Congress chose the word "equal" over the word "comparable" in order "to show that the jobs involved should be virtually identical, that is . . . very much alike or closely related to each other." *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973)(internal quotation omitted). *See also Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989); *EEOC v. Madison Community Unit School Dist.*, 818 F.2d 577, 582 (7th Cir. 1987). Here, we have employees whose jobs demand the performance of quite different functions. Ms. Wheatley and Ms. Grogan do not deny that the various County departments differ in subject-matter. In fact, although Ms. Wheatley testified that all directors bear the same type of job responsibilities, she admitted that on a day-to-day basis, they work in "different world[s]."

It may well be true that all Wicomico County department directors prepare budgets and work schedules. It is certainly not true, however, that all departments have budgets and workforces of equal size. If there is a director or deputy director whose job involves the same responsibilities as does Ms. Wheatley's or Ms. Grogan's, and if any extra tasks performed by this director are indeed inconsequential, plaintiffs certainly failed to identify him.

We do not suggest that Ms. Wheatley and Ms. Grogan's action faltered because it failed to identify one specific individual who consti-

tutes a perfect male comparator. The text of the EPA may not be brushed with such a demanding gloss. However, in choosing a proper comparator position, plaintiffs cannot indiscriminately aim at all department supervisors collectively, and then expect to meet the EPA standard of "substantial equality [in] skill, effort [and] responsibility." *Kovachevich v. Kent State University*, 224 F.3d 806, 826 (6th Cir. 2000). *See also Hodgson*, 454 F.2d at 493 (same). The inquiry must be more specific. The comparison to the male employee has to be made "factor by factor" and cannot be made to "a hypothetical male with a composite average of a group's skill, effort, and responsibility." *Houck v. Virginia Polytechnic Inst.*, 10 F.3d 204, 206 (4th Cir. 1993). It is here that plaintiffs fall short.

Accepting the EPA argument relied on by plaintiffs at trial would be unfaithful to the statutory text. In essence, plaintiffs ask us to convert the EPA equality standard into a similarity test. We decline to hold that having a *similar* title plus *similar* generalized responsibilities is equivalent to having *equal* skills and *equal* responsibilities. Were we to adopt that position, we would deprive compensation structures of all flexibility and deny employers the chance to create pay differentiations that reflect differing tasks and talents. In passing the EPA, Congress embraced "the principle of equal pay for equal work regardless of sex." *Corning Glass* 417 U.S. at 190. Congress did not authorize the courts "to engage in wholesale reevaluation of any employer's pay structure in order to enforce their own conceptions of economic worth." *Prince William Hosp. Corp.*, 503 F.2d at 285. There is no question that Ms. Wheatley and Ms. Grogan are valuable assets to Wicomico County. But it is not the job of the courts to discard Congress' studied use of the term "equality" and set the price for their services.

For the above reasons, we agree with the district court that plaintiffs' original EPA argument lacks merit.

### B.

Plaintiffs also ask us to consider a second EPA argument, which was unveiled moments before the district judge granted judgment for the defendant. Rather than comparing themselves to other County directors and deputy directors, Ms. Wheatley and Ms. Grogan

switched course and asked to be compared to male employees assigned their same Hendricks grade (Grade 17 and 13 respectively). We need not address the merits of this argument, however, for we agree with the lower court that this theory came too late in the day for the case to be fairly tried on it.

Issues raised for the first time on appeal "are generally not considered absent exceptional circumstances." *Williams v. Prof. Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002). *See also Singleton v. Wulff*, 428 U.S. 106, 120 (1976). The policies behind the rule are obvious: "respect for the lower court, [an avoidance of] unfair surprise to the other party, and the need for finality in litigation and conservation of judicial resources." *Tele-Communications, Inc. v. Commissioner*, 12 F.3d 1005, 1007 (10th Cir. 1993)(internal quotation omitted).

Although the plaintiffs technically voiced their second EPA argument to the lower court, those policy concerns are still implicated. Plaintiffs raised their new theory at the eleventh hour — once they sensed that their original theory was doomed. The new argument did not appear in the complaint, nor was it mentioned to the jury in opening statements. And the switch caught the trial judge and opposing counsel completely by surprise. With some frustration, the trial court addressed plaintiffs' counsel:

> I don't want to be impatient with you . . . [but] you're telling me that you can now go to the jury on a whole different theory than was presented in opening statement, [and] was presented in your client's testimony. . . .
>
>     . . . .
>
>     . . . [Plaintiffs] are the ones who should have identified [their theory] early, not leaving it up, just throwing it all up and say, well, we'll decide that later, Judge, you decide it as the case gets narrowed down. That's just not the way trials work.

The adversary system cannot function properly if lawyers are allowed to dump arguments on a district court at the last minute, with-

out developing them during the course of litigation. Certainly, litigants are permitted to make alternative arguments as part of their case-in-chief. But there is a thin line between an alternative argument and a last-minute switch in strategy which risks severely prejudicing an opponent and surprising the district court. This situation is an example of the latter.

Despite plaintiffs' contention to the contrary, it is insufficient that the evidentiary basis for their second argument may exist somewhere in the record. An appellate court "cannot assume the functions of a special master and roam at large over the record, . . . any attempt on its part to do so would probably do a great deal more harm than good." *Hutchinson v. Fidelity Inv. Ass'n*, 106 F.2d 431, 436 (4th Cir. 1939). Lawyers have a duty not just to submit evidence, but to provide some focus to their argument. This was not done here.

### III.

We thus decline to address the merits of plaintiff's second EPA argument, and we affirm the district court's holding on their first.[2] The judgment of the district court is

*AFFIRMED*.

---

[2]Plaintiffs additionally contend that the district court erred by awarding judgment to defendant on their Title VII claims. "Although the evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004), (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The trial judge noted that "perhaps one could make a policy decision that the head of Emergency Services should be paid the same as the head of Public Works." But to say that Title VII requires such an outcome is a different matter altogether. The county contended throughout that any pay differentials reflected nothing more than the fact that employees were performing different jobs. The evidence provides no basis for concluding that this explanation serves as a pretext for the practice of intentional sex discrimination.