**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 07-1282**

─────────────

JULIA F. GREGORY, as personal representative of the Estate of
Asberry Wylder, and in her individual capacity,

Plaintiff - Appellant,

v.

JON R. ZUMULT, Chief; COYLE KINARD, Captain; CHARLES A. SMITH,
Deputy Chief; RICHARD DEAN, Corporal; TIMOTHY JAMES HANDY,
Officer; MICHAEL D. SUTTON, Officer; MATTHEW B. HUGHES,
Officer; DAVID A. NEUMANN, Officer; STEVEN S. EVANS, Officer;
MATTHEW J. LAWLESS, Officer; JAMES WALLEY, Sergeant; NORTH
CHARLESTON POLICE DEPARTMENT; CITY OF NORTH CHARLESTON; J. AL
CANNON, JR., Sheriff of the Charleston County Jail,

Defendants - Appellees.

─────────────

Appeal from the United States District Court for the District of
South Carolina, at Charleston. Patrick Michael Duffy, District
Judge. (2:05-cv-3061-PMD)

─────────────

Submitted: July 17, 2008          Decided: September 26, 2008

─────────────

Before MICHAEL, KING, and GREGORY, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Mark W. Hardee, THE HARDEE LAW FIRM, Columbia, South Carolina, for
Appellant. Stephanie P. McDonald, Sandra J. Senn, SENN, MCDONALD
& LEINBACH, LLC, Charleston, South Carolina, for Appellees.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Julia F. Gregory, the personal representative of Asberry Wylder, appeals the district court's grant of Appellees' Fed. R. Civ. P. 50 motion for judgment as a matter of law dismissing her wrongful death, survival, and loss of consortium claims under 42 U.S.C. § 1983 (2000). We have reviewed the record and find no reversible error.

On the afternoon of November 7, 2003, Wylder walked into a grocery store in North Charleston, South Carolina. Wylder threatened grocery store clerks with a serrated steak knife and took a package of ham before leaving the store. Police officers confronted Wylder outside the store and, according to their testimony and the testimony of several nearby eyewitnesses, repeatedly told him to drop the knife and get on the ground. Wylder refused and ignored the warnings while backing away from the officers, leading them across the street. Wylder eventually dropped the ham, reached into his pocket, and pulled out a screwdriver that he had sharpened to a point. The officers failed in their attempts to disarm Wylder by using pepper spray and batons. During one of the attempts, Wylder cut Officer David Neumann on the lip and chin with the knife. When Wylder advanced toward the officers, Officer James Handy drew his firearm and fired a single shot that hit Wylder. Wylder fell to one knee, but he refused to drop the knife and attempted to get back to his feet.

- 2 -

Handy fired a second shot and Wylder fell to the ground, where officers subdued and handcuffed him. Wylder died as a result of the gunshot wounds.

This court reviews de novo the grant of a Fed. R. Civ. P. 50 motion for judgment as a matter of law, viewing the facts in the light most favorable to the nonmoving party. A Helping Hand, LLC v. Baltimore County, 515 F.3d 356, 365 (4th Cir. 2008). "Judgment as a matter of law is proper only if 'there can be but one reasonable conclusion as to the verdict.'" Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). "Such a motion is properly granted if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." Wheatley v. Wicomico County, 390 F.3d 328, 332 (4th Cir. 2004) (internal quotation marks and citation omitted); see Fed. R. Civ. P. 50(a)(1).

Gregory claims the district court failed to look at the evidence in the light most favorable to her when it found Wylder possessed the weapons and threatened the police officers. Five bystanders testified they neither saw weapons in Wylder's hands nor saw him provoke the officers. While the district court had to draw all reasonable inferences in favor of Gregory, it also could consider uncontradicted and unimpeached evidence from disinterested witnesses. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133, 150 (2000). Two store employees, unimpeached disinterested witnesses, testified Wylder threatened them with the knife from a short distance. The coroner, also an unimpeached disinterested witness, found cuts on Wylder's hand consistent with holding a serrated knife. None of the witnesses dispute that a knife and screwdriver matching the descriptions provided by the witnesses who saw the weapons were recovered from the ground near Wylder. One of Gregory's witness, James Blankenship, saw the knife, as did disinterested witnesses Michael Branham and Charles Hall.

In Sigman v. Town of Chapel Hill, 161 F.3d 782 (4th Cir. 1998), Mark Sigman threatened police officers with a knife from inside a house. When he exited the house, the officers warned Sigman to stop, but when he continued to approach they shot him twice, mortally wounding him. Id. at 784-85.

> Sigman held that the statements of persons who claimed to have observed, from a cheering mob on the other side of the street, that the suspect was unarmed did not create a triable issue of material fact where the officers closest to the encounter unanimously testified that they perceived the suspect to be armed. [Sigman, 161 F.3d] at 787. The Sigman Court concluded that given the volatile and dangerous atmosphere and the need to make a split-second self-defense decision, the question of whether the suspect had a knife was not necessarily material to the question of whether a reasonable officer could have perceived him to be a violent threat. Id. at 788.

Rogers v. Pendleton, 249 F.3d 279, 292-93 (4th Cir. 2001) (footnote omitted).

- 4 -

In the present case, there was uncontroverted evidence that Wylder had threatened to hurt the store employees with a knife. The five officers who testified gave detailed and consistent testimony describing Wylder's possession of the knife and screwdriver. The officers, who were closer than any bystander, uniformly testified to Wylder's volatile and unpredictable actions and how Handy acted quickly when he perceived Wylder as a threat to the officers.

> In a rapidly evolving scenario such as this one, a witness's account of the event will rarely, if ever, coincide perfectly with the officers' perceptions because the witness is typically viewing the event from a different angle than that of the officer. For that reason, minor discrepancies in testimony do not create a material issue of fact in an excessive force claim, particularly when, as here, the witness views the event from a worse vantage point than that of the officers.

Anderson v. Russell, 247 F.3d 125, 130-31 (4th Cir. 2001) (citing Sigman, 161 F.3d at 788). The discrepancies between the officers' testimony and the observations of the bystanders who did not see the knife or Wylder's aggressive actions are not enough to raise a material question of fact disputing the version of events described by the unimpeached witnesses and the consistent testimony of the officers. We conclude the district court did not err in its factual conclusions when it granted the Rule 50 motion.

A claim that police used excessive force is examined under the Fourth Amendment to determine whether the force used was objectively reasonable. Graham v. Connor, 490 U.S. 386, 394-97

- 5 -

(1989).  Under Graham, a court must focus on the moment that force was used.  Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991).  Actions prior to that moment are not relevant in evaluating whether the force used was reasonable, even if the suspected criminal activity is relatively minor.  Anderson, 247 F.3d at 132; Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996).  "An officer's [decision] is 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' allowing for the fact that 'police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving.'"  Milstead v. Kibler, 243 F.3d 157, 163 (4th Cir. 2001) (quoting Graham, 490 U.S. at 396, 397).

"The intrusiveness of a seizure by means of deadly force is unmatched."  Tennessee v. Garner, 471 U.S. 1, 9 (1985). However, such deadly force may be employed "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others."  Id. at 11. "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."  Id. at 11-12.

Here, the officers repeatedly warned Wylder to stop, drop his weapons, and get on the ground. The officers knew of Wylder's threats to harm the store employees and saw him strike Officer Neumann. The officers unsuccessfully attempted to use nonlethal force to disarm Wylder, but he resisted. When he perceived Wylder as a threat to the safety of the officers, Handy made a split-second decision to shoot Wylder.

Even if Wylder was not actually about to attack the officers, Handy and the other officers acted on their reasonable perception that Wylder was about to do so. "[T]he Fourth Amendment does not require omniscience. . . . Officers need not be absolutely sure . . . of the nature of the threat or the suspect's intent to cause them harm - the Constitution does not require that certitude precede the act of self protection." Elliott, 99 F.3d at 644; see also Slattery v. Rizzo, 939 F.2d 213, 215-16 (4th Cir. 1991) (finding deadly force appropriate when suspect failed to comply with officer's order to raise his hands and officer reasonably believed suspect to be coming at him with a weapon, although the "weapon" turned out to be a beer bottle). The situation had escalated to the point that the officers believed the use of deadly force was necessary to prevent harm to themselves.

Gregory argues Handy's actions were unreasonable and he could have used a lesser degree of force. Notwithstanding the officers' use of pepper spray and batons, the "suggestion that the

officers might have responded differently is exactly the type of judicial second look that the case law prohibits." <u>Elliott</u>, 99 F.3d at 643. The district court properly declined to look back in hindsight to second—guess Handy's decision to use deadly force instead of a lesser degree of force.

Handy's split-second decision to use deadly force against Wylder was reasonable in light of Handy's well-founded belief that Wylder was threatening to harm the officers. Thus, Handy's use of deadly force does not constitute a Fourth Amendment violation. As Handy's actions were reasonable, we need not address any claims against the other officers, the police department, the chief of police, and the town of North Charleston because "[i]n the absence of any underlying use of excessive force . . ., liability cannot be placed on either the non-shooting officers, a supervisor, or the City." <u>Hinkle v. City of Clarksburg</u>, 81 F.3d 416, 420 (4th Cir. 1996).

Because the district court did not err when it granted Appellees' motion for judgment as a matter of law, we affirm the judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>