**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0660n.06

No. 13-2331

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 25, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RAYMOND J. CAREY, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| FOLEY & LARDNER LLP, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellee.** | ) | |
| | ) | |

**Before: MOORE, SUTTON, and ALARCÓN, Circuit Judges.[*]**

**KAREN NELSON MOORE, Circuit Judge.** Raymond J. Carey, a partner in the Detroit office of Foley & Lardner LLP ("Foley"), became dissatisfied after comparing his compensation to that of other partners. He calculated the rate of pay per billable hour for all partners in the Detroit office and determined that his rate of compensation was among the lowest. Carey argues that Foley discriminated against him on the basis of gender, race, and age because female, minority, and younger partners were compensated at a higher rate based on their income per billable hour. Because Carey failed to provide evidence that any of the partners to whom he compared himself performed substantially equal work, we conclude that he cannot establish a genuine factual dispute regarding at least one element of a prima facie case of discrimination. Therefore, we **AFFIRM** the district court's grant of summary judgment.

---

[*]The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

## I. BACKGROUND

Raymond J. Carey joined Foley & Lardner LLP as a partner in the Labor & Employment Group in October 2000. Carey's practice involved advising and representing companies in a range of employment-related matters, including "negotiating a collective bargaining agreement or managing and strategizing . . . to defeat corporate-wide organizing campaigns." R. 39-23 (Carey Dep. at 172) (Page ID #1367). Although Carey temporarily served as the Litigation Chair for the Detroit Office in 2002, he did not take an active role in firm management. Carey retired on January 31, 2014 at the age of sixty.

As an active partner, Carey's compensation was determined by the Management Committee, which assigned each partner a number of compensation "units" based upon recommendations produced by the Compensation Committee. The Compensation Committee considered comments submitted by the "office managing partner and department chair, [and] comments sent by Industry Team department chair," R. 48-3 (Jaspan 30(b)(6) Dep. at 31) (Page ID #3224), as well as the memorandum each partner prepared describing his own "contributions to the Firm during the current fiscal year." R. 48-2 (Compensation Mem. Email) (Page ID #3036). Foley does not use a mathematical "formula" or "numeric weighting" to calculate compensation. R. 48-3 (Jaspan 30(b)(6) Dep. at 130) (Page ID #3323); R. 48-4 (Jaspan Dep. at 125) (Page ID #3463). Instead, the Management and Compensation Committees consider both "quantitative data regarding each partner's personal production, billings, collections, work in process and receivables" and a range qualitative metrics in a holistic manner to make

compensation decisions.  R. 48-2 (Year-End Report Mem.) (Page ID #2980).  The qualitative

factors include:

- the skill level of the partner (*e.g.*, does he/she first-chair bet-the-company cases or lead major transactions, or is the partner's contribution primarily in support roles or smaller matters) and his/her effort to build a practice with a national reputation,
- the partner's actions truly indicative of ownership in the firm (*i.e.*, acting beyond his/her self-interest for the benefit of the firm . . .),
- the quality of the partner's investment time,
- unacceptable or outstanding practices relating to the partner's overall time commitment to the firm,
- the partner's contribution to client share initiatives, teamwork and enterprise creation,

. . .

- unacceptable or outstanding conduct pertaining to interaction with associates, and specific performance as a formal or informal mentor,
- situations of work hoarding by partners to the detriment of associates and/or younger partners,
- the partner's actions to promote diversity in the firm, [and]
- the partner's pro bono contribution.

R. 48-2 (Year-End Report Mem.) (Page ID #2980).  Foley also "look[s] longer term than a single

year's contribution" and places "limitations on the down side [and] on the up side as to what [it]

would do with [compensation] in a particular year."  R. 48-4 (Jaspan Dep. at 127) (Page ID

#3465).  The long-term view promotes gradual rises and falls in compensation so that a partner

"whose practice falls off" in a given year will not experience a drastic drop in salary.  *Id.*

Carey claims that he was never sent a document "specifying objective criteria against

which [he was] going to be evaluated for compensation purposes," and instead he insists that he

was told "that compensation decisions were highly subjective."  R. 39-23 (Carey Dep. at 191–

93) (Page ID #1372).  However, Carey does not dispute that each year Foley emailed all partners

3

with instructions to submit a compensation memorandum describing their contributions to the firm in specified categories, such as teamwork and contribution to business expansion, business practices, business planning, supervision and mentoring, diversity, and other investment time activities. R. 48-2 (Compensation Mem.) (Page ID #3029–56).

From the beginning of Carey's employment with Foley, the Management Committee noticed problems with Carey's method of practice. The Management Committee commented that Carey "[d]oes not use associates [and that a]ssociates do not like working with him when they have the opportunity." R. 41 (Management Committee Comments) (Page ID #1644). The Committee received reports that characterized Carey as a "lo[ne] wolf," a "silo," a "[t]otal island," and a "one man band." *Id.* (Page ID #1645, 1647–49). At the end of the 2008/2009 fiscal year, Carey's department chair commented: "Unfortunately, [Carey] is somewhat of a silo and does not leverage his work. As a result the compensation recommendation is somewhat lower than his numbers would suggest. He needs to be told that he would make more money 'if' he pushed some of the work down." *Id.* (Carey Year-End Profile) (Page ID #1616). The Compensation Committee considered these comments regarding Carey's lack of collaboration with other partners and associates, and determined that Carey "need[ed] to pay [a] heavy tax for [his] mode of practice/lack of enterprise creation." *Id.* Accordingly, the Management Committee fixed Carey's compensation for fiscal years 2007/2008 through 2011/2012[1] as follows:

---

[1]The parties agree that any portions of Carey's claims that relate to his compensation before February 28, 2008 are time-barred. *See* 29 U.S.C. § 255(a) (providing for a two-year

4

| Fiscal Year | Compensation Units | Annual Compensation | Billable Hours/Total Hours |
|---|---|---|---|
| 2007/2008 | 45 | $387,855 | 1936/2467 |
| 2008/2009 | 52 | $421,044 | 2088/2440 |
| 2009/2010 | 68 | $475,252 | 2400/2684 |
| 2010/2011 | 68 | $481,508 | 1744/2249 |
| 2011/2012 | 60 | $393,540 | 1223/1909 |

R. 41 (Carey Year-End Partner Profiles) (Page ID #1593–1642).

Carey was dissatisfied with his compensation for the 2008/2009 fiscal year. On April 15, 2009, he emailed Stanley Jaspan, Foley's Managing Partner, and Ralf-Reinhard Boer, Foley's Chairman, making allegations of discrimination with respect to his compensation:

> The firm's continuing and most recent unfair treatment of me with respect to compensation and other terms and conditions of employment evinces a pattern and practice of actionable breach of contract, misrepresentation, interference, unjust enrichment, various other tortious acts, violation of the Equal Pay Act, and discrimination against me on the basis of at least race and gender in violation of federal and Michigan civil rights laws, among other putative causes of action.

*Id.* (Discrimination Email) (Page ID #1773). When Carey met with Jaspan to discuss his allegations, Carey identified at least six partners in the Detroit office who he claims were compensated more than him unfairly. For example, Carey complained that Nicole Lamb-Hale, an African-American female, who was at the time the Office Managing Partner of the Detroit office, received a higher rate of compensation based on her billable hours for the year. He

statute of limitations for Equal Pay Act ("EPA") claims, which can be extended to three years if an EPA violation was "willful").

5

contended that Anne Marie Uetz, a female partner who chaired the Detroit office's Litigation Department, also was compensated at a higher rate per billable hour. Jaspan investigated Carey's complaints and determined that any disparity in pay between Carey and the partners he identified was justified by their superior contributions to the firm in terms of financial performance, leadership, or associate development.

On December 22, 2010, Carey filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). Before the EEOC responded to the charge, Carey filed a complaint in the United States District Court for the Eastern District of Michigan alleging that Foley violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and related state laws. The district court declined to exercise supplemental jurisdiction over the state-law claims because they predominated over the single federal claim. R. 3 (Partial Dismissal) (Page ID #102–03). After the EEOC issued a right to sue letter, Carey amended his complaint to include allegations of discrimination on the basis of gender, race, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, the Civil Rights Act of 1991 ("CRA"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, in addition to the Equal Pay Act claim.

Foley filed a motion for summary judgment on all claims, R. 39 (Def. Mot. for Summ. J.) (Page ID #1160–91), and Carey filed a cross-motion for partial summary judgment with respect to his gender discrimination claims under the EPA, Title VII, and the CRA. R. 46 (Pl. Mot. for Partial Summ. J.) (Page ID #1790–1815). Carey also moved to strike certain paragraphs of

Jaspan's Declaration and Supplemental Declaration. R. 65 (Mot. to Strike) (Page ID #4012–40).

The district court granted Foley's motion for summary judgment and denied both of Carey's

motions. R. 70 (D. Ct. Op.) (Page ID #4110–22). The district court initially noted that "[a]s a

partner, Plaintiff may or may not be covered as an 'employee' under these anti-discrimination

statutes," but the court declined to decide whether Carey was a covered employee because it

concluded that he could not succeed on the merits of his claims. *Id.* at 3 n.1 (Page ID #4112).

The district court concluded that Carey failed to establish at least one element of his prima facie

case with respect to each of his discrimination claims. The district court also explained that it

had denied Carey's motion to strike portions of Jaspan's Declarations "as untimely and without

merit." *Id.* at 7 n.4 (Page ID #4116). Carey filed this timely appeal of the district court's

judgment with respect to the EPA, Title VII, and ADEA claims.[2]

## II. MOTION TO STRIKE

Carey moved to strike portions of Jaspan's Declaration and Supplemental Declaration

pertaining to: (1) the factors that guide Foley's compensation decisions for partners, (2) the

specific performance problems that prompted the Management Committee to compensate Carey

at a lower rate than his financial metrics otherwise suggested, and (3) the specific reasons that

guided the Management Committee's compensation decisions for other Foley partners. He

---

[2]Carey referred to his claim under the CRA and to his related state-law claims in the statement of issues, but he did not develop any argument based on fact or law in the body of his brief. Accordingly, we consider Carey's CRA and state-law claims abandoned. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

argues that these portions of the Declarations should have been stricken because they were inconsistent with Jaspan's declaration testimony, they constitute inadmissible hearsay, they contained inadmissible legal opinion, or they were otherwise irrelevant to the issue presented by the cross-motions for summary judgment.

Ordinarily, we review a district court's decision to deny a motion to strike an affidavit or declaration for abuse of discretion. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006). In the instant case, however, we need not decide whether the district court properly denied Carey's motion to strike because we do not rely on either of the Declarations to reach our decision. We find ample evidence in Jaspan's deposition testimony and the documentary records produced by Foley to support our conclusions on each of Carey's claims. Accordingly, we decline to address whether the denial of Carey's motion to strike was an abuse of the district court's discretion.

## III.  EMPLOYMENT DISCRIMINATION CLAIMS

Carey argues that Foley discriminated against him on the basis of gender, race, and age by compensating him less per productive hour than female, minority, or younger partners. We review de novo the district court's grant of summary judgment. *Warf v. United States Dep't of Veterans Affairs*, 713 F.3d 874, 877 (6th Cir. 2013). In reviewing whether summary judgment is appropriate, we view all evidence in the light most favorable to the nonmoving party to determine whether there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)

(internal citations omitted). Only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" may we affirm a grant of summary judgment. Fed. R. Civ. P. 56(a).

## A. Equal Pay Act

Carey claims that Foley discriminated against him on the basis of gender in violation of the Equal Pay Act by paying him less than his female colleagues for substantially equal or greater work. An employer violates the EPA when it discriminates "between employees[3] on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Only if Carey presents sufficient evidence to prove a prima facie case does the burden shift to Foley to demonstrate that the unequal payment was made pursuant to "a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1) (formatting omitted); *see also Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 800 (6th Cir. 1998).

---

[3]The EPA, Title VII, and the ADEA are statutes designed to protect "employees" from discrimination. Whether a partner in a professional organization can be categorized as an employee is a highly fact-intensive inquiry that focuses "on the actual role played by the claimant in the operations of the involved entity and the extent to which that role dealt with traditional concepts of management, control and ownership." *Simpson v. Ernst & Young*, 100 F.3d 436, 443 (6th Cir. 1996) (internal quotation marks omitted); *see also Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 446 (2003). Because we conclude that Carey cannot succeed on the merits of his claims, we need not decide whether he is an "employee" under the statutes.

Carey has presented evidence that he was compensated at a lower "rate" than his female colleagues: He calculated the rate of pay per "productive" time (*e.g.* total compensation divided by billable hours) for each of the partners in the Detroit office and concluded that his rate was among the lowest. R. 48-2 (Compensation Table) (Page ID #3116). Thus, the parties primarily dispute whether Carey has provided evidence that he performed "equal work" in comparison to his female colleagues sufficient to withstand summary judgment.

Carey argues that all active partners at Foley perform substantially equal work, regardless of their professional experience or areas of specialization because they all hold equal qualifications as licensed lawyers. Foley counters that partners in the Labor and Employment Practice Group are the sole proper comparators because they are the only lawyers who perform the same substantive work as Carey. Neither party is correct because neither has identified the class of partners who have similar responsibilities and perform similar duties to Carey. A comparison between two jobs to determine whether they require "equal work" must focus on "the skills and qualifications actually needed to perform the jobs." *Beck-Wilson v. Principi*, 441 F.3d 353, 363 (6th Cir. 2006) (internal quotation marks omitted). "Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." 29 C.F.R. § 1620.14(a). Thus, two jobs may require "equal work" under the EPA even if they are not identical in all respects. *Beck-Wilson*, 441 F.3d at 363. However, the jobs must require "substantial equality of skill, effort, responsibility and working conditions." *Odomes v. Nucare,*

*Inc.*, 653 F.2d 246, 250 (6th Cir. 1981). Because the comparison focuses on the duties and responsibilities of the jobs under comparison, two jobs that bear the same title do not necessarily require "equal work." *Beck-Wilson*, 441 F.3d at 362 ("In determining whether a comparator is appropriate for the purposes of an EPA claim, our focus is on actual job requirements and duties, rather than job classifications or titles."); *see also Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004) ("We decline to accept the argument . . . that employees with the same titles and only the most general similar responsibilities must be considered 'equal' under the EPA."); *Gunther v. Cnty. of Washington*, 623 F.2d 1303, 1309 (9th Cir. 1979) (same).

In the instant case, Carey cannot show that all partners perform substantially equal work merely because they hold the title "partner." Rather, it is his burden to introduce evidence that a female colleague was paid at a higher rate than he was despite working in a position that requires similar qualifications, skills, and responsibilities. Whether two attorneys perform "equal work" depends on the size and scope of the attorney's cases, the importance of his or her practice group to the firm's financial health, his or her responsibility for recruiting and mentoring associates, and his or her leadership role in the firm, among other factors. Thus, a partner in any practice group could serve as an appropriate comparator, but only if there is evidence that the partner performs roughly equivalent duties and functions.

Carey has presented no evidence of the specific "job requirements and duties" of his female colleagues, *Beck-Wilson*, 441 F.3d at 362, and thus he has not shown a violation of the EPA. Carey points to his female colleagues' attorney profiles available to the public on Foley's

11

website as evidence that they perform substantially equal work. *See* R. 48-2 (Partner Profiles) (Page ID #3058–3104). These profiles are marketing materials that list each partner's representative clients and professional accomplishments, but they do not describe the specific duties the partner performs during her representation of the client (*i.e.*, taking and defending depositions, drafting motions or briefs, conducting internal investigations, negotiating, managing client relationships, etc.). Moreover, Carey testified that his practice was unique in comparison to other partners at Foley: "A lot of the work that I do is . . . negotiating a collective bargaining agreement or managing and strategizing, implementing strategies to defeat corporate-wide organizing campaigns. . . . [W]e don't even have partners other than me that have done it." R. 39-23 (Carey Dep. at 172) (Page ID #1367). Thus, Carey failed to provide evidence from which a reasonable jury could conclude that Foley compensated him at a lesser rate than female partners who perform "equal work" in violation of the EPA. Accordingly, we affirm the district court's grant of summary judgment in favor of Foley on Carey's EPA claim.

**B. Title VII**

Carey argues that Foley discriminated against him on the basis of gender[4] and race by compensating similarly situated female and minority partners at higher rates. An employee may

---

[4]Generally, a plaintiff's gender-based Title VII wage-discrimination claim rises or falls with his EPA claim because "[a] Title VII claim of wage discrimination parallels that of an EPA violation insofar as it incorporates the EPA's affirmative defenses." *Beck-Wilson*, 441 F.3d at 369. However, when a plaintiff's EPA claim fails because he provided insufficient evidence of a prima facie violation, he nonetheless may be able to establish the different elements of a prima facie Title VII violation. Because we decline to consider whether Foley has "established [an EPA] defense so clearly that no rational jury could have found to the contrary," *Buntin*, 134 F.3d

prove a claim of gender- or race-based discrimination under Title VII using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):  the employee has the initial burden of establishing his prima facie case; the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions, and finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual.  *See Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).  To prove a prima face case of discrimination, the employee must demonstrate that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was . . . treated differently than similarly-situated, non-protected employees."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (internal quotation marks omitted).  In addition to the usual elements of a prima facie case, a plaintiff asserting a claim of "reverse discrimination" must also "show[] that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority."  *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) (internal quotation marks omitted).

Carey has not presented sufficient evidence to withstand summary judgment on either his gender-based or race-based claim of discrimination because he cannot show that Foley is among the few employers that discriminate against male or Caucasian employees.  Carey argues that an internal memorandum describing Foley's pledge to take "a series of action steps to better support

---

at 800, we will consider whether Carey presented evidence to prove a prima facie case of discrimination under Title VII.

13

the professional development and improve the retention of our women attorneys," R. 48-2 (Women Retention Initiatives Email (Page ID #3106), shows that Foley discriminates in favor of women and minority attorneys in promotion to leadership positions. His argument is without merit for two reasons. First, the memorandum he references says nothing about the firm's efforts to retain or promote minority attorneys, and thus no reasonable jury could infer from it that Foley discriminates against the racial majority. Second, the memorandum indicates that Foley needed to take corrective action to stem the "disproportionate attrition of women attorneys." *Id.* Thus, when read in its entirety, the memorandum is evidence that Foley was an employer with a working environment that, in a variety of ways, impeded the advancement of women. No reasonable jury could infer from a memorandum recognizing that specific initiatives were needed to encourage women to stay at Foley that it was an "unusual employer" that discriminated against men in compensation decisions. To the contrary, the white male partners were almost uniformly the highest compensated partners in Foley's Detroit office. R. 41 (Partner Production Report) (Page ID #1656). Thus, Carey has not identified any evidence, apart from his "own poor treatment," *see Treadwell v. Am. Airlines, Inc.*, 447 F. App'x 676, 679 (6th Cir. 2011), that Foley discriminated against the majority white and male partners. Carey has not sustained his burden of providing evidence sufficient to prove a prima facie case of gender- or race-based discrimination, and we accordingly affirm the district court's grant of summary judgment on Carey's Title VII claims.

## C. Age Discrimination in Employment Act

Finally, Carey argues that Foley discriminated against him on the basis of age in violation of the ADEA by compensating him at a lower rate than younger partners. The ADEA provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). A plaintiff may use circumstantial evidence to raise an inference of age discrimination by using the *McDonnell Douglas* burden-shifting framework. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). To prove a prima facie case of age discrimination, the plaintiff must show that "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position;" and (4) "similarly situated non-protected employees were treated more favorably." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521–22 (6th Cir. 2008) (internal quotation marks omitted). To assert that a more favorably treated employee is "similarly situated," a plaintiff must demonstrate that the comparable employee is similar "in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). "For the purposes of resolving an age-based wage discrimination claim under the ADEA, . . . the relevant factors include the skill, effort, and responsibilities of each job and the working conditions under which each job is performed." *Mickey*, 516 F.3d at 522 (internal quotation marks omitted).

Carey cannot withstand summary judgment on his age-discrimination claim because he has not presented evidence to prove every element of his prima facie case. As we explained during our discussion of the EPA claim, Carey has presented no evidence regarding the kinds of duties and responsibilities that any other partner performed. Therefore, there is no evidence in the record to support an inference that there is another partner who was similarly situated to Carey in all relevant respects except age, but was treated more favorably. Thus, Carey has not satisfied his burden of producing evidence from which a reasonable jury could conclude that he established a prima facie case of age discrimination. We affirm the district court's grant of summary judgment on Carey's ADEA claim.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment on all claims.