# United States Court of Appeals for the Federal Circuit

2009-5058

CONNIE E. YANT, BARBARA D. ALHEIT, TINY L. ANDERSON,
NANCY K. BEDFORD, JENNIFER E. BLAIR,
ROBERT COLEMAN BLAKEY, MARGUERITE E. CALLAHAN,
CAROL CALLAWAY-LANE, BEATRICE EDMUNDSON, LORI EMERY,
DONNA ESMOND, RAMONA FARRAR, LOIS E. FINCH, FRANKIE FISHER,
DEBRA L. GREENSPAN, GLENDA HARRIS, LINDA T. HOWERTON,
SANDRA KEY JASPER, JO ANN JOHNSON, LINDA LOUISE LAUGHLIN,
JOHN H. LEWIS, KRISTI SUE LOWE, DAVID LEO LYBARGER, GERALYN MCVEIGH,
VERNA PORTH, JACKLEN ROBINSON, TROY A. RUSSELL, AMY SADLER,
STACY L. SCARBRO, AMANDA M. SHAW, LOURDES ELIZABETH SPITLER,
ANDREA LEA STUPKA, KATHY L. WATKINS, JENNIFER WATSON
and ROBIN DIANNE YOUNG,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

John F. Burke, III, Mansour, Gavin, Gerlack & Manos, Co., LPA, of Cleveland, Ohio, argued for plaintiffs-appellants.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia McCarthy, Assistant Director. Of counsel on the brief was Raney Irwin, Attorney, Regional Counsel Office, United States Department of Veterans Affairs, of Nashville, Tennessee.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-5058

CONNIE E. YANT, BARBARA D. ALHEIT, TINY L. ANDERSON,
NANCY K. BEDFORD, JENNIFER E. BLAIR,
ROBERT COLEMAN BLAKEY, MARGUERITE E. CALLAHAN,
CAROL CALLAWAY-LANE, BEATRICE EDMUNDSON, LORI EMERY,
DONNA ESMOND, RAMONA FARRAR, LOIS E. FINCH, FRANKIE FISHER,
DEBRA L. GREENSPAN, GLENDA HARRIS, LINDA T. HOWERTON,
SANDRA KEY JASPER, JO ANN JOHNSON, LINDA LOUISE LAUGHLIN,
JOHN H. LEWIS, KRISTI SUE LOWE, DAVID LEO LYBARGER, GERALYN MCVEIGH,
VERNA PORTH, JACKLEN ROBINSON, TROY A. RUSSELL, AMY SADLER,
STACY L. SCARBRO, AMANDA M. SHAW, LOURDES ELIZABETH SPITLER,
ANDREA LEA STUPKA, KATHY L. WATKINS, JENNIFER WATSON
and ROBIN DIANNE YOUNG,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 08-CV-077,
Judge Christine O.C. Miller.

_____

DECIDED:  December 14, 2009
_____

Before NEWMAN, MAYER, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> MAYER.  Concurring opinion filed by <u>Circuit Judge</u> PROST.

MAYER, <u>Circuit Judge</u>.

Plaintiffs appeal the judgment of the United States Court of Federal Claims

granting the United States summary judgment that Plaintiffs do not qualify for coverage

under the Equal Pay Act, 29 U.S.C. § 206(d)(1). Yant v. U.S., 85 Fed. Cl. 264 (2009). We affirm.

## BACKGROUND

The thirty-five plaintiffs ("the Yant plaintiffs") are current and former nurse practitioners ("NPs") employed by the United States Department of Veterans Affairs ("VA") in the Tennessee Valley Healthcare System ("TVHS"). The Yant plaintiffs brought suit against the VA under the Equal Pay Act, 29 U.S.C. § 206(d) et seq., alleging that, as predominantly female NPs, they are paid at a lower rate than the predominantly male physician assistants ("PAs") in the THVS, performing jobs of equal skill, effort, and responsibility under similar working conditions. The VA hires NPs and PAs to fill the same TVHS positions, and the functional statements (i.e. job descriptions) are the same for NPs and PAs. NPs, unlike PAs, are required to have a master's degree and are licensed through their states.

From 2004 to 2008, the percentage of female NPs in the TVHS ranged from 78.4% to 80.6%. For example, in July 2008, fifty-five of the sixty-nine NPs employed by the TVHS were females. During the same time period, the percentage of female PAs in the TVHS ranged from 40% to 44%. For example, in July 2008, eight of the twenty PAs employed by the TVHS were females.

Based on these statistics, the Yant plaintiffs allege that the VA discriminated against NPs "by paying them less than the predominantly male PAs." They brought suit in the Court of Federal Claims alleging that, as a result of the VA's conduct, they have suffered loss of compensation, fringe benefits, future earnings, reputation, self-esteem, time, money, and have also suffered humiliation and embarrassment.

2009-5058                                    2

The VA moved to dismiss the case arguing that the court lacked jurisdiction or, alternatively, that it was entitled to summary judgment because the Equal Pay Act does not apply to mixed-gender groups. The court found that it did have jurisdiction, but that the gender ratios in this case were sufficient to deny liability under the Equal Pay Act on summary judgment.

The Yant plaintiffs appeal the grant of summary judgment and the conclusion that they do not qualify for coverage under the Equal Pay Act. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review a grant of summary judgment by the Court of Federal Claims de novo. Suess v. United States, 535 F.3d 1348, 1359 (Fed. Cir. 2008). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In 1963, Congress amended the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, to prevent gender-based wage discrimination by enacting the Equal Pay Act. Specifically, the Equal Pay Act prohibits employers from discriminating on the basis of sex by paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. See 29 U.S.C. § 206(d)(1). The Act provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he

pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

Id. (emphasis in original).

"The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." Corning Glass Works v. Brennan, 417 U.S. 188, 208 (1974). In order to establish a prima facie case of wage discrimination under the Equal Pay Act, plaintiffs "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Id. at 195 (quoting 29 U.S.C. § 206(d)(1)).

Once plaintiffs have carried their burden, "the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions." Id. at 196. Specifically, the employer can avoid liability by proving that payment to employees of the opposite sex "is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

For purposes of this case, it is undisputed that the NP and PA positions require equal skill, effort, and responsibility, and are performed under similar working conditions. The gender make-up of these two groups of employees at the TVHS is, likewise, undisputed.

The Yant plaintiffs argue that they established a prima facie case and that the trial court erred by not finding that the gender ratios of the NPs and PAs were sufficient to raise a genuine issue of material fact. In response, the government relies heavily on remarks made by Representative Goodell in the legislative history of the Equal Pay Act. Specifically, the third item in the "examples and general guidelines" states that "[d]ifferences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by this act." 109 Cong. Rec. 9209 (1963).

We agree that summary judgment was appropriate, but for reasons other than gender ratios. As discussed below, the plaintiffs have failed to raise a genuine issue of material fact that the pay differential between NPs and PAs is either historically or presently based on sex.

Corning Glass Works guides our decision. From 1944 to 1966, Corning paid male night-shift inspectors more than female day-shift inspectors. The pay differential was implemented at a time when state law prohibited women from working at night. Id. at 191-92. In 1966, Corning opened the night shift to female employees, but retained the higher wage for night inspectors. Id. at 205. This allowed some women to enjoy the higher night salary after 1966. The day inspectors, however, remained entirely female and were compensated at the lower salary level.

The Supreme Court found that the night and day inspectors were engaged in "equal work," and rejected Corning's affirmative defense that the shift differential was a "factor other than sex" justifying the disparate wages. Id. at 203-05. The Court held that this post-1966 disparity between night and day wages perpetuated the 1944-1966

wage differential made illegal by the Equal Pay Act. Id. at 209-10.

A key distinction between Corning Glass Works and the case before us is how the differential in pay arose. In Corning Glass Works, "[t]he differential arose simply because men would not work at the low rates paid women inspectors." Id. at 205. In other words, the difference in pay was based solely on gender. As such, and consistent with the language of the statute, this was a violation of the Equal Pay Act. See 29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex . . . ." (emphasis added)). This also finds support in the legislative history. See, e.g., H.R. Rep. No. 88-309, at 3 (1963) (noting that the Equal Pay Act "declares that wage differentials based solely on the sex of the employee are an unfair labor standard" (emphasis added)); 109 Cong. Rec. 9196 (1963) (statement of Rep. Thompson) ("[The Equal Pay Act] only applies to instances where men and women are doing work and where there is a wage differential based solely on sex." (emphasis added)).

Here, the pay differential between NPs and PAs is based on two separate pay scales, one that is regionally based (the NP scale) while the other is nationally based (the PA scale). In fact, the Yant plaintiffs concede that prior to 1991 both NPs and PAs were paid on the same national salary scale. Based on the current NP and PA pay scales, the salary for NPs exceeds that of PAs in some areas of the country. In these areas, it is the male PAs that seek relief under the Equal Pay Act, alleging that the predominantly female NPs are paid more for equal work. See, e.g., Alverson v. United States, 88 Fed. Cl. 331 (2009). The result is that both male and female NPs seek succor under the Equal Pay Act in one region, and simultaneously male and female PAs

in a different region seek the same relief.

The Yant plaintiffs did not present any evidence that the decision to pay PAs on a national scale and NPs on a regional scale had any basis in sex, historically or presently. Other courts have held that proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act, see, e.g., Peters v. City of Shreveport, 818 F.2d 1148, 1153 (5th Cir. 1987), abrogated on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), but there is a fundamental difference between a showing of discriminatory intent and a showing that discrimination based on sex exists or at one time existed.

An examination of congressional intent clearly evidences that the burden is on the plaintiff to show the latter. "I should like to make it clear that the burden of proof to show a violation is on the Secretary of Labor; he must prove that any differential in pay which exists is actually based on sex, and he will have to sustain that burden of proof. I think this is a very important part of the legislative history." 109 Cong. Rec. 9208 (1963) (statement of Rep. Griffin). Representative Goodell's remarks, which echo this view, are instructive as he was the principal proponent of the bill. County of Washington v. Gunther, 452 U.S. 161, 171 (1981). He explained that "[t]he Secretary would have to establish a prima facie case showing that there is discrimination based on the factor of sex. If that is done, then, of course, the employer could rebut the proof and show that the differential was based upon factors other than sex." 109 Cong. Rec. 9208 (1963); see also id. ("If [the employer] has a reasonable standard of differentiation, the [plaintiff] is not to come in, even, and judge the reasonableness or unreasonableness of this differentiation among employees, except as it shows a clear pattern of discrimination

2009-5058                                7

against sex.").

Mere reliance on gender ratios of two groups does not establish discrimination based on sex. In fact, an example in the legislative history explicitly cautions against applying the Equal Pay Act in a situation similar to the facts here: "We do not have in mind the [plaintiff] going into an establishment and saying, 'Look, you are paying the women here $1.75 and the men $2.10. Come on in here, Mr. Employer, and you prove that you are not discriminating on the basis of sex.'" Id. (statement of Rep. Goodell).

We are mindful of the Supreme Court's admonition that permitting employers to avoid liability under the Equal Pay Act "by agreeing to allow some women to work . . . at a higher rate of pay as vacancies occurred would frustrate, not serve, Congress' ends." Corning Glass Works, 417 U.S. at 208. This case, however, is completely devoid of the historical discrimination at issue in Corning Glass Works, and the record before us does not suggest that the TVHS is hiring female PAs to avoid liability under the Equal Pay Act. An Equal Pay Act violation is established when an employee demonstrates past or present discrimination based on sex. There has been no such showing here. Therefore, the ratios of males to females are irrelevant. Because the Yant plaintiffs fail to raise a genuine issue of material fact that the pay differential between NPs and PAs is based on sex, they have failed to make a prime facie case.

## CONCLUSION

Accordingly, the judgment of the Court of Federal Claims is affirmed.

## AFFIRMED

# United States Court of Appeals for the Federal Circuit

2009-5058

CONNIE E. YANT, BARBARA D. ALHEIT, TINY L. ANDERSON,
NANCY K. BEDFORD, JENNIFER E. BLAIR,
ROBERT COLEMAN BLAKEY, MARGUERITE E. CALLAHAN,
CAROL CALLAWAY-LANE, BEATRICE EDMUNDSON, LORI EMERY,
DONNA ESMOND, RAMONA FARRAR, LOIS E. FINCH, FRANKIE FISHER,
DEBRA L. GREENSPAN, GLENDA HARRIS, LINDA T. HOWERTON,
SANDRA KEY JASPER, JO ANN JOHNSON, LINDA LOUISE LAUGHLIN,JOHN H.
LEWIS, KRISTI SUE LOWE, DAVID LEO LYBARGER, GERALYN MCVEIGH,
VERNA PORTH, JACKLEN ROBINSON, TROY A. RUSSELL, AMY SADLER,
STACY L. SCARBRO, AMANDA M. SHAW, LOURDES ELIZABETH SPITLER,
ANDREA LEA STUPKA, KATHY L. WATKINS, JENNIFER WATSON
and ROBIN DIANNE YOUNG,,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 08-CV-077, Judge Christine O.C. Miller.

PROST, <u>Circuit Judge</u>, concurring in the result.

While I agree with the majority's ultimate conclusion, I cannot agree with the reasoning espoused in reaching that conclusion.

I

I concur in the result because the trial court properly granted summary judgment based upon the gender ratios at issue in this case. As <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 208 (1974), established, and as the United States Court of Federal Claims recognized, "[a] group of plaintiffs does not have to be <u>exclusively</u> one gender to attain standing as aggrieved persons" under the Equal Pay Act ("EPA"). <u>Yant</u>

v. United States, 85 Fed. Cl. 264, 268 (2009) (emphasis added). Mixed-gender groups will be, in some circumstances, capable of alleging violations of the EPA. In Corning, for instance, the Supreme Court held that the employer could not escape EPA liability by leaving the wage disparity in place and simply permitting lower-paid women in the day shift to "bid for jobs" in the higher-paid, male dominated night shift. 417 U.S. at 205. As a result, even though women were allowed into the higher-paid night shift—indeed, the Court specifically stated that the employer had made "more than a token gesture to end discrimination"—the Court held that the employer violated the EPA. Id. at 205–06.[1] Thus, Corning established that the mere presence of the disadvantaged sex in the higher-paid group will not destroy a cause of action under the EPA.

Here, the Court of Federal Claims framed the issue clearly: "Whether the imprecise division between a point where courts should protect groups from being subjected to attempts to avoid EPA liability through a loophole and a point where employees are part of a mixed-gender group not covered by the EPA creates a contested issue of fact . . . ." Yant, 85 Fed. Cl. at 271; see id. at 268 ("No magic threshold or ratio determines whether a mixed-sex group of plaintiffs is protected by the EPA. In fact, 'whether a policy affects both male and female employees to such an extent that an EPA claim would be invalid is a question of fact.'" (quoting Beck-Wilson v. Principi, 441 F.3d 353, 362 (6th Cir. 2006))).

---

[1]    This is because it is not enough to permit the discriminated-against sex to apply for and obtain jobs in the higher-paid field; instead, "the company could not cure its violation except by equalizing the base wages of female day inspectors with the higher rates paid the night inspectors." Corning, 417 U.S. at 206.

The relevant facts are not in dispute. The trial court first established that about 20% of the lower-paid nurse practitioner ("NP") group were "putatively preferred" men, while about 40% of the higher-paid physician's assistant ("PA") group were "putatively disadvantaged" women. Id. at 272. Further, "[n]o suggestion [wa]s present, nor d[id] plaintiffs allege, that the agency hired token men as NPs or token women as PAs to avoid a cause of action under the EPA." Id. As the trial court noted, to establish a prima facie case under the EPA, the plaintiffs had to show that their employer paid "different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning, 417 U.S. at 195. In this case, nearly half of the higher-paid group is female. In my view, given the significant participation of each gender in both classes, and given that the plaintiffs failed to allege that the significant participation was some attempt to escape liability under the EPA, the plaintiffs failed to establish that their employer "paid different wages to employees of opposite sexes." The trial court likewise concluded that the plaintiffs had failed to establish their prima facie case and held that the government was entitled to summary judgment. I see no reason to disturb those conclusions based on the undisputed facts of this case.

II

The majority agrees that summary judgment is appropriate, but discards the trial court's reasoning; instead, the majority imports a novel requirement into the plaintiff's prima facie case in granting summary judgment where "the plaintiffs have failed to raise a genuine issue of material fact that the pay differential between NPs and PAs is either

historically or presently based on sex." Maj. Op. at 5. As the majority recognizes, the EPA does not require a discriminatory <u>intent</u>. Nevertheless, it proceeds to state that "there is a fundamental difference between a showing of discriminatory intent and a showing that discrimination based on sex exists or at one time existed." In attempting to draw this line, the majority fails to recognize the fundamental difference between establishing a prima facie case sufficient to survive a motion for summary judgment and ultimate success on the merits.

The EPA provides, in relevant part:

> No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, <u>except where</u> such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1) (emphasis added). By establishing all of the elements of his or her prima facie case—"that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions,'" <u>Corning</u>, 417 U.S. at 195—a plaintiff <u>has</u> effectively shown that discrimination based on sex exists or at one time existed, at least for purposes of surviving a motion for summary judgment. Nothing else is required.

The majority's misreading becomes apparent when it focuses upon the fact that "the pay differential between NPs and PAs is based on two separate pay scales, one that is regionally based (the NP scale) while the other is nationally based (the PA

scale)." Maj. Op. at 6. This fact has nothing to do with the plaintiffs' prima facie case, and to discuss it in this context is to conflate the plaintiffs' burden to establish a prima facie case under the EPA with the government's burden to prove that any pay differential is "based on any other factor other than sex." 29 U.S.C. § 206(d)(1)(iv); see Corning, 417 U.S. at 196 (after plaintiffs establish a prima facie case, "the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions"). Indeed, the majority makes this explicit, stating that "[t]he Yant plaintiffs did not present any evidence that the decision to pay PAs on a national scale and NPs on a regional scale had any basis in sex, historically or presently." Assuming arguendo that the plaintiffs otherwise established a prima facie case, however, it is the government's burden to prove that the pay scales did not have any basis in sex. On these facts, it may well be that the government would carry that burden, but that is not the question to be answered at this stage in the proceedings.

Thus, I concur in the result because I would affirm the trial court based on the composition of the mixed-gender groups in this case (see Part I), but not for the reasons articulated by the majority.