PROST, Circuit Judge,
concurring in the result.
While I agree with the majority’s ultimate conclusion, I cannot agree with the reasoning espoused in reaching that conclusion.
I
I concur in the result because the trial court properly granted summary judgment based upon the gender ratios at issue in this case. As Corning Glass Works v. Brennan, 417 U.S. 188, 208, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), established, and as the United States Court of Federal Claims recognized, “[a] group of plaintiffs does not have to be exclusively one gender to attain standing as aggrieved persons” under the Equal Pay Act (“EPA”). Yant v. United States, 85 Fed.Cl. 264, 268 (2009) (emphasis added). Mixed-gender groups will be, in some circumstances, capable of alleging violations of the EPA. In Coming, for instance, the Supreme Court held that the employer could not escape EPA liability by leaving the wage disparity in place and simply permitting lower-paid women in the day shift to “bid for jobs” in the higher-paid, male dominated night shift. 417 U.S. at 205, 94 S.Ct. 2223. As a result, even though women were allowed into the higher-paid night shift — indeed, the Court specifically stated that the employer had made “more than a token gesture to end discrimination” — the Court held that the employer violated the EPA. Id. at 205-06, 94 S.Ct. 2223.[1] Thus, Coming established that the mere presence of the disadvantaged sex in the higher-paid group will not destroy a cause of action under the EPA.
Here, the Court of Federal Claims framed the issue clearly: “Whether the *1375 imprecise division between a point where courts should protect groups from being subjected to attempts to avoid EPA liability through a loophole and a point where employees are part of a mixed-gender group not covered by the EPA creates a contested issue of fact.... ” Yant, 85 Fed.Cl. at 271; see id. at 268 (“No magic threshold or ratio determines whether a mixed-sex group of plaintiffs is protected by the EPA. In fact, “whether a policy affects both male and female employees to such an extent that an EPA claim would be invalid is a question of fact.’ ” (quoting Beck-Wilson v. Principi, 441 F.3d 353, 362 (6th Cir.2006))).
The relevant facts are not in dispute. The trial court first established that about 20% of the lower-paid nurse practitioner (“NP”) group were “putatively preferred” men, while about 40% of the higher-paid physician’s assistant (“PA”) group were “putatively disadvantaged” women. Id. at 272. Further, “[n]o suggestion [wa]s present, nor d[id] plaintiffs allege, that the agency hired token men as NPs or token women as PAs to avoid a cause of action under the EPA.” Id. As the trial court noted, to establish a prima facie case under the EPA, the plaintiffs had to show that their employer paid “different wages to employees of opposite sexes ‘for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.’ ” Corning, 417 U.S. at 195, 94 S.Ct. 2223. In this case, nearly half of the higher-paid group is female. In my view, given the significant participation of each gender in both classes, and given that the plaintiffs failed to allege that the significant participation was some attempt to escape liability under the EPA, the plaintiffs failed to establish that their employer “paid different wages to employees of opposite sexes.” The trial court likewise concluded that the plaintiffs had failed to establish their prima facie case and held that the government was entitled to summary judgment. I see no reason to disturb those conclusions based on the undisputed facts of this case.
II
The majority agrees that summary judgment is appropriate, but discards the trial court’s reasoning; instead, the majority imports a novel requirement into the plaintiffs prima facie case in granting summary judgment where “the plaintiffs have failed to raise a genuine issue of material fact that the pay differential between NPs and PAs is either historically or presently based on sex.” Maj. Op. at 1372. As the majority recognizes, the EPA does not require a discriminatory intent. Nevertheless, it proceeds to state that “there is a fundamental difference between a showing of discriminatory intent and a showing that discrimination based on sex exists or at one time existed.” In attempting to draw this line, the majority fails to recognize the fundamental difference between establishing a prima facie case sufficient to survive a motion for summary judgment and ultimate success on the merits.
The EPA provides, in relevant part:
No employer having employees subject to any provisions of this section shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or *1376 (iv) a differential based on any other factor other than sex....
29 U.S.C. § 206(d)(1) (emphasis added). By establishing all of the elements of his or her prima facie case — “that an employer pays different wages to employees of opposite sexes ‘for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions,’ ” Corning, 417 U.S. at 195, 94 S.Ct. 2223 — a plaintiff has effectively shown that discrimination based on sex exists or at one time existed, at least for purposes of surviving a motion for summary judgment. Nothing else is required.
The majority’s misreading becomes apparent when it focuses upon the fact that “the pay differential between NPs and PAs is based on two separate pay scales, one that is regionally based (the NP scale) while the other is nationally based (the PA scale).” Maj. Op. at 1873. This fact has nothing to do with the plaintiffs’ prima facie case, and to discuss it in this context is to conflate the plaintiffs’ burden to establish a prima facie case under the EPA with the government’s burden to prove that any pay differential is “based on any other factor other than sex.” 29 U.S.C. § 206(d)(1)(iv); see Corning, 417 U.S. at 196, 94 S.Ct. 2223 (after plaintiffs establish a prima facie case, “the burden shifts to the employer to show that the differential is justified under one of the Act’s four exceptions”). Indeed, the majority makes this explicit, stating that “[t]he Yant plaintiffs did not present any evidence that the decision to pay PAs on a national scale and NPs on a regional scale had any basis in sex, historically or presently.” Assuming arguendo that the plaintiffs otherwise established a prima facie case, however, it is the government’s burden to prove that the pay scales did not have any basis in sex. On these facts, it may well be that the government would carry that burden, but that is not the question to be answered at this stage in the proceedings.
Thus, I concur in the result because I would affirm the trial court based on the composition of the mixed-gender groups in this case (see Part I), but not for the reasons articulated by the majority.

. This is because it is not enough to permit the discriminated-against sex to apply for and obtain jobs in the higher-paid field; instead, "the company could not cure its violation except by equalizing the base wages of female day inspectors with the higher rates paid the night inspectors.” Corning, 417 U.S. at 206, 94 S.Ct. 2223.